DECISION AND ORDER
WENONAT. SINGEL, Chief Appellate Justice.
Background
On July 28, 2014, the Little Traverse Bay Bands of Odawa Indians Tribal Council Members, acting in their individual capacities (“Tribal Council Members”), filed a Motion to Reconsider the Appellate Court’s Decision and Order of July 9, 2014. The Tribal Council Members urge this Court to reverse its Order affirming the decision of the Tribal Court.
Rule 7.504 of the Appellate Procedures provides the following:
Request for Reconsideration of Decision. A request for reconsideration may be filed with the Clerk of the Tribal Appellate Court, if made within fourteen (14) days of the filing of the decision with the Clerk. A copy of the request must be served upon all other parties and on the Tribal Court.
The Tribal Council Members’ motion for reconsideration was timely, since it was filed fourteen days after issuance of the Appellate Court’s Decision and Order.
Part (D) of Rule 7.504 also provides that “[t]he panel which issued the decision, which is the subject of the request, shall also decide the request for reconsideration.” When the Appellate Court issued a decision in the case, Justice Singel served the sole Appellate Justice serving on the appellate panel. As required by the rule, Justice Singel also considers the Tribal Council Members motion for reconsideration.
*290 Discussion
The Tribal Council Members’ brief in support of their Motion for Reconsideration begins with a number of errors and omissions. The brief states, for example, that the Appellate Court “took for itself substantial governmental power which has not been given to it under the Tribe’s Constitution.” Appellant’s Brief in Support of Motion to Reconsider at 1. The Tribal Council Members also admonish the Court to “stay within the limits of the jurisdiction provided to it by the Tribe’s laws ... and not violate the separate powers of the political branches.” Id. at 1. Yet the Tribal Council Members fail to recognize that the Appellate Court’s decision demonstrated an exacting commitment to interpreting and applying the requirements of the Tribal Constitution. In particular, the Constitution expressly provides in Article XVIII, Paragraph B, that
Officials and employees of the Little Traverse Bay Bands of Odawa Indians who act beyond the scope of their duties and authority shall be subject to suit in Tribal Court for purposes of enforcing rights and duties established by this Constitution or other applicable laws.
The Appellate Court notes that the Tribal Council Members’ brief makes absolutely no reference to this Constitutional provision establishing qualified immunity for tribal officials and employees. The Tribal Council Members do not explicitly reject the application of the qualified immunity provision to their conduct in their brief, but their failure to even acknowledge the provision implies that they assume that the provision is inapplicable to them adoption of budget amendments by simple motion. The Appellate Court rejects the theory that the Tribal Council Members possess absolute immunity when they adopt budget amendments by simple motion. Such a result would be completely at odds with the purpose and intent of Article XVIII, Paragraph B, which does not set aside any special form of absolute immunity for Tribal Council Members. As required by the Constitution, the actions of Tribal Council Members are subject to suit in Tribal Court for the purposes of enforcing the rights and duties established by the Constitution or other applicable laws when they act “beyond the scope of their duties and authority.” By interpreting the Tribal Constitution’s provisions for sovereign immunity and the qualified immunity of tribal officials and employees, this Appellate Court exercises its Constitutionally-delegated function of interpreting the law; it does not hoard power to itself to the detriment of the other branches of government.
The Tribal Council Members’ brief also cautions that the Appellate Court’s interpretation of the Constitution’s Article XVIII on Sovereign Immunity may result in increased exposure to litigation in federal or state courts because, it asserts, the Appellate Court’s opinion adopts a weaker immunity standard than the one articulated by the U.S. Supreme Court in Michigan v. Bay Mills Indian Cmty., — U.S. -, 134 S.Ct. 2024, 188 L.Ed.2d 1071 (2014). This assertion is patently false. Unlike this case, the Bay Mills decision did not involve the application of a Tribal constitutional provision allowing for tribal officials and employees to be sued when they act “beyond the scope of their duties authority.”
The Tribal Council Members’ brief claims that the Appellate Court exceeded its constitutional power “by deciding a matter for which there was no real party in interest and no plaintiff with standing in the trial court.” The Appellate Court agrees that standing is a critical component of meeting the Tribal Constitution’s Article IX, Part (C)(1). That provision states:
*291 The judicial power of the Tribal Court shall extend to all civil and criminal cases arising under this Tribal Constitution, statutes, regulations or judicial decisions of the Little Traverse Bay Bands of Odawa Indians.
The Appellate Court has long recognized the significance of the Tribal Constitution’s “cases” requirement. In a decision denying a request for an advisory opinion, we endorsed concluded that a “case” is “a controversy between adverse parties which requires a declaration of the parties’ rights.” Furthermore, the case requirement is satisfied when “a suit is brought in furtherance of an honest and actual antagonistic assertion of rights by one party against another, and valuable legal rights will be directly affected to a specific and substantial degree by the Court’s decision.” In re: Request by the LTBB Tribal Council for an Advisory Opinion at 9.
The Tribal Council Members’ brief cites numerous cases decided by the U.S. Supreme Court, but it does not acknowledge that these cases interpret the case or controversy requirement in Article III of the U.S. Constitution. While cases from other jurisdictions may be instructive to the extent that they offer persuasive reasoning that is consistent with the Tribal Constitution and laws, they are not binding on the Appellate Court, and citations to them should acknowledge this important fact. The U.S. Supreme Court has interpreted standing under the U.S. Constitution to require an injury-in-fact that is causally connected to the defendant’s actions, and it requires that the injury be redressable by a favorable decision of the court. These requirements seem consistent with our definition of “case,” since the injury-in-fact element establishes adversity between the parties, and the redressability requirement ensures that valuable legal rights will be directly affected by the Court’s decision. If we apply these three elements to this case, we find that the Intervening Tribal Chairman suffered an injury-in-fact by past attempts to approve budget modifications without the use of the legislative process, preventing him from exercising the Chairperson’s veto power. Furthermore, the Tribal Council Member’s actions denied the Tribal Chairman the use of his veto power, thereby establishing that its actions were the cause of the Chairperson’s grievance. And finally, the Tribal Court and Appellate Court each possessed the power to issue an injunction enjoining the Tribal Council Members, satisfying the redressability requirement.
As for the original Plaintiff/Appel-lee Ken Harrington who filed the complaint and continued to prosecute the case after his removal from office, the Appellate Court finds that while he may have lacked standing following his removal from offiee, the lack of standing was cured by the new Tribal Chairman’s intervention on appeal. When the Appellate Court received the Tribal Council Members’ Notice of Appeal, it simultaneously received a motion to intervene from then-Acting Tribal Chairman Dexter McNamara. Since Chairman McNamara’s brief explained that he would adopt the same adversarial posture as former Chairman Harrington, the Appellate Court concluded that standing was satisfied, and litigation on appeal could proceed without creating the harms that might otherwise flow from litigation of a purely hypothetical or speculative controversy.
In the second and final section of the Tribal Council Members’ brief in support of its Motion for Reconsideration, it also asserts that the Appellate Court’s opinion regarding sovereign immunity is wrong. However, the Tribal Council Members’ brief does not accurately charac *292 terize the Appellate Court’s opinion. Contrary to the statement of the Tribal Council Members, this case did not involve a suit filed directly against the Tribal Council to challenge a legislative act. Rather, it involved a challenge of the Tribal Council Members’ participation in amending the tribal budget by simple motion. When passing motions, the individual Tribal Council members do not possess absolute immunity from suit. Instead, they are subject to suit strictly in accordance with Article XVIII, Paragraph B. To reiterate, Paragraph B provides:
Officials and employees of the Little Traverse Bay Bands of Odawa Indians who act beyond the scope of their duties and authority shall be subject to suit in Tribal Court for purposes of enforcing rights and duties established by this Constitution or other applicable laws.
Under Paragraph B, Tribal Council members possess qualified immunity in their individual capacity when they pass motions, if their actions with respect to passing a motion are authorized by an unconstitutional law. In other words, if the Tribal Council passes an unconstitutional law and Tribal Council members engage in actions that carry out that law, they are acting “beyond the scope of their duties and authority,” and they may be sued in Tribal Court to enforce rights and duties established by the Constitution. In this case, the Tribal Council members enacted legislation authorizing the Tribal Council to amend the budget without presentment to the Tribal Chairperson for the exercise of the Executive’s veto authority. The Tribal Council then carried out this legislation by adopting a motion that amended the tribal budget. The combination of 1) adopting an unconstitutional law that violated separation of powers and then 2) carrying out that law by amending the budget by simple motion, led the Appellate Court to conclude that the Tribal Council members acted beyond the scope of them duties and authority. As a result, the Tribal Council members could lawfully be sued in their individual capacities under Article XVIII, Paragraph B to enforce constitutional rights and duties.
Conclusion
In conclusion, the Appellate Court DENIES the Tribal Council members’ Motion for Reconsideration, and the Decision and Order dated July 9, 2014.
SO ORDERED.
APPENDIX A
DECISION AND ORDER
Dated July 9, 2014
Background
This case is an appeal of a complaint filed by Plaintiff/Appellee Kenneth J. Harrington in the LTBB Tribal Court on April 21, 2011. At the time of the filing of the complaint, Plaintiff/Appellee was the Tribal Chairperson of the Little Traverse Bay Bands of Odawa Indians. His complaint alleged that the Appellants, all members of the LTBB Tribal Council at the time, had violated the LTBB Constitution by appropriating tribal funds by motion rather than by formal resolution. On November 29, 2012, Tribal Court Judge James Genia issued an Order Following Trial Hearing concluding that the Tribal Council’s act of appropriating funds by simple motion and not by law or resolution was unconstitutional. The Order also enjoined the Tribal Council from any further appropriations of funds by simple motion. For the reasons described below, the Appellate Court hereby affirms the Tribal Court.
Issues Presented on Appeal
The issues on appeal include the following:
*293 1. Does sovereign immunity bar judicial review of the claim?
2. Should the case be dismissed for lack of standing on the part of either the Plaintiff Appellee or the Intervening Plaintiff Appellee?
3. Does the Tribal Council possess authority to modify budget resolutions by simple motion, without use of the Constitutional process for enacting laws or adopting resolutions?
Summary of the Facts
This case is an appeal of a complaint filed by Plaintiff/Appellee Kenneth J. Harrington in the LTBB Tribal Court on April 21, 2011. At the time of the filing of the complaint, Plaintiff/Appellee was the Tribal Chairperson of the Little Traverse Bay Bands of Odawa Indians. The Defendants were all LTBB Tribal Council members at the time, and they were sued in their individual capacities. The party now referred to as Intervening Appellee Dexter McNamara was then serving as Vice Chairperson of the Tribe.
The Plaintiff/Appellee’s complaint alleged that the Appellants had violated the LTBB Constitution by modifying the tribal budget by motion rather than by formal resolution. The Tribal Council members took these actions on three separate occasions on March 7 and December 19, 2010, and on March 20, 2011. Through their adoption of a motion, the Tribal Council members bypassed the legislative process described in Article VII, Section D(l) of the LTBB Constitution, which requires that resolutions be submitted to the Tribal Chairperson for review and possible veto.
The Plaintiff/Appellee argued that these actions of the Tribal Council members were unconstitutional and outside the scope of their official duties and authority, and therefore they were not shielded by the Tribe’s sovereign immunity. The Plaintiff/Appellee requested various forms of relief, including a declaration that the Tribal Council members’ actions were unlawful and a permanent injunction prohibiting the Tribal Council members from amending the Tribal budget by motion in the future.
On May 17, 2011, the Tribal Council members filed an answer to the complaint in which they denied that their actions were unconstitutional and in which they asserted sovereign immunity as an affirmative defense. The Tribal Council members also filed a motion to dismiss on that same day on the grounds that the lawsuit was barred by sovereign immunity.
On May 22, 2011, the Tribal Council enacted an amendment to the Tribe’s Administrative Procedures Statute. The amendment created two distinct ways for the Tribal Council to act. The first way, by resolution, requires submission to the Tribal Executive Branch for review and signature. The second way, by simple motion, allows for unilateral action by the Tribal Council without review or signature by the Tribal Executive Branch. The amendment also specified that one of the actions eligible for action by simple motion was the appropriation of funds. The Tribal Council enacted this amendment over the Tribal Chairperson’s veto by approving the legislation with a supermajority vote of 7 in favor and only 2 opposed.
Immediately following the passage of the amendment to the Administrative Procedures Statute, the PlaintiffiAppellee filed his reply with the Tribal Court. The reply asserted that sovereign immunity did not bar the action because the lawsuit was filed against the Tribal Council members in their individual capacities, and the lawsuit fell within the LTBB Constitution’s special provision disclaiming sovereign im- *294 raunity for tribal officials who act beyond the scope of then- duties and authority.
In August of 2011, before the Tribal Court had held a trial in the matter, the Plaintiff/Appellee was removed from the office of Tribal Chairperson by a special vote of the citizenship. Intervening Appel-lee McNamara, who had served as Vice Chairperson during the Plaintiff/Appellee’s term in office, became Tribal Chairperson on August 23, 2011. After the Plaintiff/Appellee’s removal from office, he continued to prosecute his claims against the Tribal Council members, and on June 28, 2012, the Tribal Court denied the Tribal Council members’ motion to dismiss.
The Tribal Court held a trial on May 17 and June 29, 2012. On November 29, 2012, the Tribal Court issued a decision and final order that enjoined the Tribal Council members from appropriating Tribal funds by motion and that struck down the amendment to the Administrative Procedures Statute as unconstitutional.
Discussion
I. Standard of Review
The Appellate Court upholds factual findings of the Tribal Court unless they are “clearly erroneous.” LTBB Rules of Appellate Procedure Rule 7.501(A). The Appellate Court reviews the Tribal Court’s legal conclusions de novo. LTBB Rules of Appellate Procedure Rule 7.501(E).
II. Sovereign Immunity Does Not Bar Judicial Review of this Suit
Because this lawsuit was brought against the LTBB Tribal Council members in their individual capacities, the Court must first address whether sovereign immunity bars judicial review. Sovereign immunity acts as a jurisdictional bar to claims against the Tribe or tribal officials, so judicial review may only proceed if the claim falls within an exception to tribal sovereign immunity. Exceptions to sovereign immunity exist where tribal law recognizes a limitation to sovereign immunity.
Article XVIII of the Tribe’s Constitution provides:
A. Tribal Immunity from Suit
The Little Traverse Bay Bands of Oda-wa Indians, including all subordinate entities, shall be immune from suit except to the extent that the Tribal Council clearly and expressly waives its sovereign immunity, and officials and employees of the Tribe acting within the scope of their duties or authority shall be immune from suit.
B. Suit Against Officials and Employees
Officials and employees of the Little Traverse Bay Bands of Odawa Indians who act beyond the scope of their duties and authority shall be subject to suit in Tribal Court for purposes of enforcing rights and duties established by this Constitution or other applicable laws.
LTBB Const. Art. XVIII. Under the Tribal Constitution, therefore, tribal officials acting within the scope of their duties and authority are immune from suit. Conversely, tribal officials who act beyond the scope of their duties and authority are not protected by the Tribe’s sovereign immunity “for purposes of enforcing rights and duties established by this Constitution or other applicable laws.” Id. at § B. In this case, the Appellate Court must determine whether the Tribal Council members acted within the scope of their duties and authority when they amended a budget resolution by passage of simple motions. This case presents a more difficult question than instances where a tribal official takes action that the official admits is not taken under the color of the official’s authority, such as when a tribal official undertakes to sell their personal property. Here, the Tribal Council members claimed *295 that their actions fell within the scope of their official authority.
In two prior decisions, the Appellate Court addressed whether sovereign immunity barred a claim against a tribal official. First, in Carey v. Victories Casino, No. A-004-0606, — Am. Tribal Law -, 2007 WL 6918017 (LTBB App.Ct. March 27, 2007) (Carey I), we held that sovereign immunity does not act as a jurisdictional bar to claims against Tribal officials if they are accused of unconstitutional conduct. Id. at-, slip op. at 8. Second, in Carey v. Espinoza, No. A-011-1008 (LTBB App.Ct. May 2, 2011) (Carey III), we held that the determination of whether a tribal employee’s actions were within the scope of their official duties and authority requires an assessment of “whether or not the type of action is within the employee’s scope of duties or authority, not the alleged circumstances of the action.” Id. at 4-5. The appeal in this case provides the Appellate Court with the opportunity to synthesize these two prior decisions. The Appellate Court concludes that both of these precedents are consistent with the principle that tribal employees and officials enjoy sovereign immunity if their actions are based upon a constitutional law or other constitutional authority. Conversely, if the action of a tribal employee or official is taken under the authority of an unconstitutional law or lacks constitutional authority, then that individual is not protected by the Tribe’s sovereign immunity. Such actions taken under the authority of an unconstitutional law or without constitutional authority constitute the “unconstitutional conduct” referred to in Carey I, and they are not the “type of action” that falls within an employee’s scope of duties or authority that Carey III described as falling within sovereign immunity’s protection.
We recognize that the standard we adopt, that sovereign immunity does not protect a tribal employee or official who acts under color of authority of an unconstitutional law or without constitutional authority, may require a threshold examination of constitutional matters to determine the preliminary jurisdictional issue of whether sovereign immunity bars judicial review. We note at the outset that the mere allegation that a tribal official’s actions are based on an unconstitutional law is not sufficient to conclude that sovereign immunity is not a bar. On the other hand, the court need not make a final, dispositive conclusion regarding constitutional matters in order to resolve a motion to dismiss based on sovereign immunity. For purposes of determining whether sovereign immunity is a jurisdictional bar to claims against tribal employees or officials, the Tribal Court must make a threshold determination concerning whether the allegations of the complaint demonstrate that it is sufficiently likely that the complained of actions were made under color of authority of an unconstitutional law or without constitutional authority.
We also recognize that the standard we adopt is limited to cases such as the present one, where the claimant seeks prospective injunctive relief, and not monetary damages.
In this case, both the Plaintiff and the Intervening Plaintiff allege that the Tribal Council modified an existing budget resolution by passage of simple motions on three occasions. Both parties allege that the Tribal Council members’ actions lacked constitutional authority. The act of amending a budget resolution by simple motion is alleged to be unconstitutional because it is not one of the expressly enumerated powers of the Tribal Council under the Tribal Constitution, and it is alleged to constitute a violation of separation of powers because it represents an attempt *296 to bind the executive branch of government through a means other than the Tribal Council’s constitutionally established process for adopting legislation. For this reason, the Appellate Court concludes that it is sufficiently likely that the Tribal Council members’ actions were made without constitutional authority and were therefore outside the scope of their duties and authority. Judicial review of this lawsuit is therefore not barred by sovereign immunity.
III. The Intervening Appellee Has Standing to Pursue the Claims on Appeal
The Tribal Council argues that former Chairperson Ken Harrington lacks standing because he continued to litigate his claim after his removal from office. However, the Appellate Court concludes that whether the former Chairperson had standing to litigate the claim is irrelevant, since Intervening Appellee Dexter McNamara intervened, briefed, and argued the appeal as the real party in interest during his term as Tribal Chairperson. The Appellate Court therefore rejects the Tribal Council’s argument that the appeal should be dismissed for lack of standing on the part of former Chairperson Harrington. In addition, as to the Intervening Plain-tiffiAppellee, we observe that since the Appellate Court concluded that he had a sufficient basis for intervening in this appeal under Appellate Rule 10(a), he also meets the requirement for standing to pursue the claims on appeal. Order Granting Motion to Intervene (LTBB App. Ct. February 19, 2013).
IV. The Tribal Council Lacks Authority to Amend Existing Budget Resolutions by Simple Motion
The Appellate Court now turns to the substantive merits of the case, which requires resolution of whether the Tribal Council possesses the authority to amend existing budget resolutions by simple motion. The Appellate Court agrees with the conclusion of the Tribal Court that the Tribal Council lacks this authority.
We begin by noting that the Tribal Constitution vests the Tribal Council with limited, enumerated powers. Article I, Section A of the Tribal Constitution states that the Tribal membership “delegates specific powers and functions to the branches of government....” and “[a]ll powers and functions not so delegated remain with the Tribal membership.” LTBB Const. Art. I, § A. Article VI, § C of the Constitution states that “[t]he Tribal membership ... authorizes the Tribal Council to be the Legislative body and to make laws and appropriate funds in accordance with Article VII.” LTBB Const. Art. VI, § C. Article VII, Section D(l) authorizes the Tribal Council to “[m]ake laws not inconsistent with this Constitution,” and Article VII, Section E provides that “[t]he Tribal Council shall not exercise any powers not listed in this Constitution....” LTBB Const. Art. VII, § E.
In addition to the limited, enumerated powers nature of the Tribal Council, the Tribal Constitution also imposes a separation of powers on the Tribe’s three branches of government. Article VI, Section C provides that “[n]o branch of the government shall exercise the powers, duties or functions delegated to another branch.” LTBB Const. Art. VI, § C.
Because the Tribal Council possesses limited, enumerated powers, its alleged power to modify budget resolutions by simple motion must be supported with a specific enumeration within the Constitution. The Tribal Council points to Article VII, Section D(18) as the source of this *297 power. That section authorizes the Tribal Council to “[a]ppropriate funds, and enact a budget formulation statute that allows for public input from the Tribal membership.” This provision does not provide the authority which the Tribal Council requires, however, since it does not specifically authorize the Tribal Council to appropriate funds using the extra-legislative procedure of adoption by simple motion.
The Appellate Court is also convinced by the reasoning of the Tribal Court that actions of the Tribal Council are only binding on the Executive branch of government if they are adopted through the legislative process. This requirement is consistent with Article VIII, Section C(2) of the Constitution, which provides that the Tribal Chairperson’s powers and duties includes the power and duty to “execute and administer the laws and resolutions” of the Tribe. Nowhere within the constitutional enumeration of the powers and duties of the Tribal Chairperson is there the duty to execute and administer simple motions of the Tribal Council. It follows that the only means available for adopting budget modifications that will bind and impose a duty of implementation on the Executive Branch is by passage of a law or resolution. Under Article VII, Section D(l) of the Constitution, laws and resolutions adopted by the Tribal Council must be sent to the Executive for signature, and if no such signature is obtained within thirty days or if such laws or resolutions are vetoed, they must be adopted by a super-majority vote by at least seven Tribal Council members. LTBB Const Art. VII, § D(l).
Conclusion
Based on the reasoning above, the Appellate Court AFFIRMS the Order Following Trial Healing of the Tribal Court of November 29, 2012.
SO ORDERED.